DET033112

# UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN

Troy Sharbowski, a minor,
and Gina Sharbowski,
     *Plantiffs,*

v.

Utica Community Schools,
Michigan Department of Education,
and (possibly/yet to be determined):
Jane Doe(s), John Doe(s),
     *Defendants,*

Case:2:11-cv-13092
Judge: Borman, Paul D.
MJ: Michelson, Laurie J.
Filed: 07-18-2011 At 02:09 PM
CMP: TROY SHARBOWSKI, ET AL V. UTIC
A COMMUNITY SCHOOLS, ET AL (KB)

---

# Complaint

Plaintiff Gina Sharbowski files this Complaint in pro per and on behalf of her son Troy Sharbowski, a minor, against Utica Community Schools, Michigan Department of Education, (and possibly/yet to be determined): Jane Doe(s), John Doe(s), and respectfully states as follows:

1. Plaintiff would like to start off by apologizing to your honor and the court in advance for filing this case in pro per. She is not an attorney and in no way shape or form thinks she is qualified to do this and would much rather have an attorney handle it, however after attempting to contact several Education Law attorneys for representation (dozens) and not even getting a response back from majority of them, the general feedback from the ones who responded varied from: 1) they did not have time to handle a complex case of this nature,

2) reluctant to challenge/they did not want to go up against a school district that has access to unlimited funds for their defense and access to several attorneys, 3) they had conflicts of interest or circumstances that made it impossible to take this case, and 4) a couple of attorney's wanted a retainer upwards of $15,000 - $20,000 just to consider starting the case. Plaintiff's cannot afford to pay an attorney that amount of money in these bad economic times and read of a past Supreme Court ruling where parents who cannot afford an attorney due to deep rooted issues with schools over many years (like this) may file a case against the school district in pro per. Having said that though, if your honor at any time feels that Ordering the defendant district UCS to pay for an attorney for the Plaintiffs is appropriate for any reason, or would consider granting the plaintiffs a court appointed attorney (familiar in this area/at the same pay level as the def's attorney) to even the playing field, then by all means plaintiffs would humbly accept and would greatly be in support of that. On that note, if it is ok with the court Plaintiff would ask that the Request for the Defendant School District (UCS) to Pay for Plaintiffs Attorney Fees be a standing request.

   2.  Plaintiff Troy Sharbowski is a minor who is 9½ yrs old (as of this date) and is a student/has been attending Utica Community Schools since the age of 3½ yrs old. Plaintiff student has a physical or mental impairment that

substantially limits one or more major life activities. Troy's qualifying disability on his current IEP is: MILD C.I. (determined by the school). Troy's past qualifying disabilities on past IEP's has been: Speech Delay and Developmental Delay. Troy's medical diagnosis is: Autism Spectrum Disorder (ASD) and a copy was provided to the school in Nov 09' and again in May 10'.

3.  Plaintiff Gina Sharbowski is the mother of Troy Sharbowski.

4.  The defendant Utica Community Schools (UCS) is a public school district in Macomb County, Michigan with its administrative offices located at 11303 Greendale, Sterling Heights, Michigan 48321.

5.  The defendant Michigan Department of Education oversees all of the school districts throughout the state of Michigan and is believed to be located at 608 West Allegan, Hannah Building, P.O. Box 30008, Lansing, Michigan 48909.

6.  This court has jurisdiction over the parties.

7.  Venue in the United States District Court, Eastern District of Michigan is proper.

8.  This is a civil case seeking remedy, relief and damages against District UCS for Discrimination due to Disability under the Americans with Disabilities Act

(ADA), and/or Section 504 of the Rehabilitation Act of 1973 (Section 504), and/or
the Individuals with Disabilities Education Improvement Act of 2004 (IDEA),
and/or the Family Educational Rights and Privacy Act of 1947 (FERPA), just to
cover them all. Relief and damages are also sought against the Michigan
Department of Education for failing to properly handle complaints filed by
plaintiff, stemming from these issues.

9. The cause or reason behind the Disability Discrimination is unknown
at this point but may be the result of the district misusing federal funds and/or
misallocating federal funds into proper programs(?). Specifically the defendant
district UCS does not provide Extended School Year Services (ESY) to any student
in the population of students with disabilities enrolled in the district. (over3000+).
Not <u>one</u> student. Pursuant to IDEA; Each public agency shall ensure that
Extended Shool Year Services are available as necessary to provide FAPE,
consistent with paragraph (a)(2) of section 300.309.

10.  Plaintiff is entitled to a Free and Public Education (FAPE) and to receive
services appropriate to meet his needs. Plaintiff is also entitled to be free of
discrimination based on disability under Section 504

11.  Defendant district UCS receives federal financial assistance.

12.  By the defendant district UCS failing to provide ESY services to any

student in the district plaintiff student is not being honestly assessed for ESY services,

13. By failing to provide ESY services to any student in the district UCS habitually labels all students as "not qualified" to receive those services when the actual reason for denial is due to the districts policy of not providing those services to any student.

14.  Defendant district UCS has routinely labeled plaintiff student as "not qualified" to receive ESY services,

15.  By failing to provide ESY services to any student in the district the district is denying plaintiff student (and the other children) the right to be "honestly" assessed for ESY services.

16.  Defendant district UCS has failed to "honestly" assess plaintiff student for ESY services since his enrollment in the district began at the age of 3½.

17.  By failing to provide ESY services to any student in the district, plaintiff student has been denied those services each year and regresses each summer.

18.  Plaintiff students regression each summer has had an impact on his reentry into school each fall and has cause great difficulty, as a result behavior issues develop (more frequently from September through December), with the past school year being the worst.

19.  With the continued regression each summer plaintiff is falling further behind and is significantly behind his peers academically,

20.  Plaintiff has requested the defendant district UCS to place student into another program that does provide ESY services (most recently on 3-2-11), however defendant district has ignored that request and not responded.

21.  Plaintiff has requested the defendant district UCS for placement into a private program however district denied my request by responding with a Prior Written Notice (PWN), (then further lied on the PWN about reports that did not exist).

22.  Defendant district UCS has failed to provide a PWN regarding my request to place student into another program that does provide ESY services.

23.  Plaintiff requests to use this case as a means to re-request placement of student into another program that does provide ESY services, or for approval of private placement if another program is not available or not appropriate for student.

24.  Plaintiff requests help from the court to enforce the above request (on line 23).

25.  Although the district finally developed a Behavior Intervention Plan(BIP)

for the plaintiff student approx two years ago (after several requests from parent),
the district is now lying on the BIP and is failing to list or correctly identify the
reason/cause/trigger prior to each behavior incident (so that there is no correlation
to his ASD), making it impossible to create an effective BIP that works.

26.  Defendant district UCS has worded the BIP in such a way to not include
parents input on the BIP or include parent when changes are made on the BIP.

27.  Plaintiff has attempted to alert the MI Department of Education of the
district UCS's unethical behavior by alerting them by way of a complaint.

28.  Plaintiff also attempted to have the Oct 10' BIP added to plaintiff
students IEP by requesting an IEP specifically for that purpose but that request
was rejected by the supervisor from special services who routinely attended
plaintiff's IEP meetings.

29.  The defendant UCS is retaliating against plaintiffs for attempting to blow
the whistle on them,

30.  The district is failing to not properly identifying the root or cause of the
behavior issues and/or identifying them as being part of his disability (ASD) and
has created comments and reports that incorrectly identify students bad behaviors
or as just being a bad student who doesn't follow the rules.

31.  The district likely avoids properly identifying the root or cause of the

behavior issues associated with ASD as a way of not having to create IEP goals for those issues,

32.  By not having the correct goals on the IEP, the district avoids having to address those goals by way of ESY services,

33.  By not properly identifying the root or cause of students bad behaviors, and by not providing ESY services to make the transition back into school more successful each fall all of the plaintiffs needs are not being met and the behavior issues are not being properly addressed,

34.  Plaintiff's behavior problems are worsening and are a result of his current placement.

35.  Plaintiff's behavior problems are also associated with his level of ability and or mental age and will only worsen if his needs are not appropriately met,

36.  Plaintiff is easily frustrated and unable to control his reactions as a result of his level of ability and or mental age,

37.  Plaintiff students disability is such that he requires constant supervision, cues, and redirection throughout the day.

38.  Plaintiff student is not receiving constant supervision, cues and redirection at a level he needs throughout the day which makes him interact

poorly with other students and contributes to his behavior issues.

39.  Plaintiff student cannot appropriately interact with his peers as a result of his diagnosed disability ASD and the problems arise when he does not receive constant supervision, cues and redirection in all settings throughout the day.

40.  Plaintiff student can be easily coaxed into doing or saying things (that will get him in trouble) as a result of his disability and by not receiving the correct supervision, cues and redirection it leads to bad behaviors. Example: this year plaintiff came home several times stating that his peers told him to kiss another (female) student or to hit another student. Student cannot differentiate the act of coaxing or coercion and routinely does what others tell him to do as a result of his disability.

41.  Students behavior issues were arising more often when student was out of his class/away from his teacher/aide/parapro and on the playground, at lunch, or in music class, gym class, or media center, etc., (where those teachers, personnel and aids are not Autism Certified and the student was not receiving constant supervision, cues and redirection), however after I pointed that out on several occasions, the district then began to stop reporting it that way, and began reporting the behaviors issues that were happening in the classroom after the behaviors began in another setting.

42.  Students bad behaviors are the result of this placement and all of his needs not being appropriately met.

43.  District is routinely engaging in administrative neglect and procedural misconduct by failing to meet all of students needs and inaccurately identifying the cause or trigger of each behavior issue,

44.  Defendant district UCS is failing/refusing to acknowledge or admit that this placement is the reason for or the cause of the ongoing behavior issues at school.

45.  Defendant district UCS is not properly identifying the behavior issues and incorrectly identifying plaintiff as a bad student and plaintiff student is receiving conduct referrals and suspensions for behaviors related to his disability. This past year has been his worst and he was almost at the point of being expelled and/or relocated into an alternative program placement.

46.   Defendant district UCS's acts of administrative neglect and/or procedural misconduct, retaliation, and failure to provide ESY services to any student in the district (as described above) have created due process issues,

47.  Defendant district UCS's acts of administrative neglect and/or procedural misconduct, retaliation, and failure to provide ESY services to any

student in the district (as described above) have caused plaintiff student to not be properly educated for over 6 years.

48.  The defendant UCS chose this placement for plaintiff/student.

49.  Districts refusal to correct their placement decision.

50.  Over the last 3 yrs, each of students past three principals have told parent that some of his behaviors have been directed at school personnel and that they were "doing me a favor" by not reporting the attacks to the police and not having him charged for assault.

51.  The defendant UCS receives additional funding for special needs students, much more than the non-special needs students,

52.  Plaintiff has requested several times that the district correct their placement decision.

53.  The defendant UCS refuses to correct their placement decision or honor plaintiffs request to be placed in a program that does provide ESY services pursuant to the provisions of FAPE.

54.  Without ESY services plaintiff student will likely fail in this placement and will be expelled or placed in an alternative setting.

55.  The defendant UCS has a duty and obligation to be honest and truthful to all parents & students and has failed to do so. The district is not being honest & truthful by failing to correct their own placement decision. Placement seems to only change if initiated by parents or the student fails and is relocated due to behavior issues.

56.  Defendant UCS has a duty and obligation to be honest & truthful by correcting their own placement decision. This may raise the issue of a federal question.

57.  Plaintiff requests to use this case as a means to re-request District UCS to correct their placement decision before student fails in this placement.

58.  Plaintiff requests help from the court to enforce the above request (on line 48).

59.  The above acts constitute disability discrimination under section 504, ADA, IDEA, and FERPA. The above acts then opened the door for other acts of discrimination, harassment, retaliation to occur against  the plaintiffs as well, including:

> A) Acting as Parents Advocate: Plaintiffs first IEP team began helping parent with IEP meetings and told parent she did not need an advocate. Parent believed that to be truthful and interpreted that

as the role of the IEP teams.  Subsequent IEP teams also helped

parent but failed to disclose (lied about) what documentation was

needed for student to be moved/qualify for the County Autism

Program at the time he was non-verbal and would have qualified

(student was non-verbal until the age of 5½),

B) <u>Using the wrong forms</u>: On more than one occasion District UCS

used old outdated IEP forms at our meetings that did not list ESY

services on the form,

C)  <u>Failing to Discuss or Disclose</u>: Extended School Year (ESY)

services were never mentioned or discussed during the first 3 to

4 IEP meetings. Plaintiff was unaware of the requirement to

discuss that topic at that time. It was only at the parents urging

to discuss ESY services that the District UCS addresses that topic

and denied those services.

D) <u>Listing incorrect scores</u>: District failed to list the correct level of:

academic achievement, functional performance, and testing

scores on evaluations and early IEP's. The districts levels were

higher compared to scores listed on an evaluation that was

obtained & paid for by parent off site.  District then refused

parents request to list BOTH sets of scores (from District &

parents evaluation) on IEP for comparison purposes.

E)  <u>Not listing correct level of Self Help Skills needed</u>: District
    routinely failed to correctly list the level Self Help Skills plaintiff
    needed on past evaluations and IEP's.

F)  <u>Refusing to list Parents Objection</u>: District refused to list my
    objection on the 12-15-10 IEP <u>and</u> the 12-15-10 IEP regarding
    LEAST RESTRICTIVE ENVIRONMENT/Non-Academic and Extra
    Curricular Activities, (the non-academic and extra curricular
    activities parent cited to be listed:  Saturday Scholars, Before
    or After School Child Care, Summer Child Care (<-- because
    they cannot meet his needs), and he was not allowed to
    go on a Field Trip with his class and two other classes as a
    punishment for an alleged behavior issue (where the cause again
    was not properly identified)),

G)  <u>Discrimination/Harassment by Bus Driver</u>: One year plaintiff
    student was coerced by the bus driver into sitting in the very last
    seat on the bus for most of the year, where on several occasions
    he came home asleep or dripping with sweat (as a result of a
    heater blower being aimed at the very last seat). (fyi: this
    stopped shortly after I realized what was going on and the

district received my complaint filed with the MI Dept of Civil
Rights),

H) <u>Discrimination and Failing to Provide Services</u>: In 2010 the
Summer Child Care Program expelled plaintiff after only 3 weeks
due to behavior issues that developed after the program failed to
meet his needs by implementing or providing the services listed
on his IEP or BIP, (the program was advertised by the district as
being available to all students enrolled in the district and listed
the "non-discrimination" clause)

I) <u>District UCS has Failed to assess student of all areas of suspected
Disabilities (and Diagnosed Disability)</u>,

J) <u>Lying</u>: The District/Special Services Supervisor implemented the
wrong IEP after she told me (via email) that she would
implement the other one/correct IEP when school resumed in
September (reason: there were two IEP meetings held (one w/o
parent or parents consent) and the IEP was not completed prior
to summer break),

K) <u>Lying on a PWN</u>: District stated on a PWN that the basis for
denial was due to two reports resulting from observations.
However, parent never received a copy of either report and it

was uncovered through a FOIA request that the reports did not

exist when the PWN was signed.

L) Retaliation: District UCS altered the content on a BIP (Behavior

Intervention Plan) immediately after plaintiff requested an

IEP to specifically have the BIP added the IEP, (the meeting

ended in disagreement which was orchestrated by the supervisor

from Special Services, where then the BIP was immediately

changed or altered after the meeting ended in disagreement),

M) Altering Forms: In the spring of 2010 district UCS provided parent

with Questionnaire forms such as Vineland II, etc. (for Evaluation

purposes) that were to be filled out by parent, however ½ of the

form was already filled out by the school psychologist,

N) Failing to List correct level of Self Care/Self Help Skills: District

routinely provided more supports to plaintiff (under the table) than

what were being listed on the IEP's,

O) Violating our Privacy Rights: (the extent of this is not

known yet),

60. The above instances have not only caused distress and conflict, many of

the above acts have directly impacted plaintiffs rights to receive services appropriate

to meet his needs,

61.  Since defendant district help parent with IEP matters in the beginning and
diverted her from obtaining an advocate from the start, district should have to
continue to advocate parent, but in an honest & truthful way and be responsible
correct any problems that act may have caused, (this may also raise a
federal question)

62.  Defendant district UCS listed on the above mentioned PWN that student
currently does not qualify for the County Autism Program because his disability is no
longer severe enough. On the same PWN district lied about reports (that did not
exist) as the reason for the denial.

63.  Defendant district UCS has a duty and obligation to always be honest and
truthful to parents. Plaintiffs believed that the district and IEP team(s) would always
be honest and truthful,

64.  Defendant district UCS stopped helping plaintiff through IEP's and
has been encouraging Plaintiff to contact an Advocate in retaliation to plaintiffs
complaints. District has went so far as contacting two advocates for plaintiff (without
plaintiff asking),

65.  The due process issues are a result of the District UCS administrative

and/or procedural misconduct of failing to disclose what documentation was needed from parent to properly enroll student into County Autism Program and constitutes Disability Discrimination. Seeking assistance from an outside Advocate now would be pointless since: 1) district UCS does not provide ESY services to any student and 2) district has stated that plaintiff student no longer qualifies for placement in the County Autism Program (on the last PWN),

66. Defendant District UCS failed to provide parent with all information relevant to his education,

67. One of Plaintiff students past teacher's finally disclosed the correct information needed (by accident?) to enter the County Autism Program to the plaintiff one year after the student was evaluated and would have qualified (with proper documentation).

68. Plaintiff has since requested and re-requested that district UCS correct their placement decision.

69. The defendant UCS's intentional interference has obstructed plaintiffs ability to enroll student into the County Autism Program and deprived student of that service at the time he would have qualified,

70. Plaintiffs cannot recoup the regression that is lost each summer,

71. Plaintiffs cannot recoup lost services of county Autism Program that student once qualified for,

72. Student has forever lost the opportunity to see if the county Autism Program would have met his needs better and been more beneficial to him,

73. Defendant UCS listed on PWN that only the county programs have ESY services but that student no longer qualifies,

74. Defendant UCS should be complying with federal laws and providing ESY services,

75. A FAPE should not include anyone having to go through all of the instances that we have gone through (listed above), nor struggle to obtain services that are guaranteed by law. Plaintiff should also not have to spend money for an attorney to file a case like this to defend our rights to be treated in an fair and honest way and to receive appropriate services. Having to pay an attorney to file a case like this would not make it a Free And Public Education and therefore violate the provisions of FAPE. I cannot even begin to describe how mentally exhausting or how much is taken out of you to have to respond and address all of the above instances. Each instance has required multiple phone calls, emails and meetings. They have been beyond time consuming and have literally drained me, caused distress, loss of sleep, depression, caused me to miss time from work (which is

already a reduced working schedule to accommodate my children's school schedule), and have damaged the relationship between plaintiff(s) and defendants. In a way I almost feel like Troy and I are being provoked (or "bullied" is a good word) by the district(?), maybe in an effort to get a negative response so they can then use the negative responses against us(?). I don't know. The above acts and instances constitute discrimination against a disabled child and violate federal laws (Section 504, ADA and IDEA). The above acts have only been aimed against/directed towards me and my younger son Troy. My older son who is also a student in the school district UCS, is 1½ yrs older, an all A honor roll student, and does not have a disability has not experienced any of the above issues. And we have not been treated this way.

76. Plaintiff's notified and sought assistance from Defendant MI Department of Education (Office of Special Education and Early Intervention Services), via complaints filed against District UCS,

77. Defendant MI Department of Education maintains a commitment/ promise that they are compliant with federal laws,

78. Defendant MI Department of Education based their decisions on responses from the district and did not thoroughly investigate the matters, which resulted in the dismissal of all but one part of one complaint: regarding

the use of old outdated IEP forms that were not listing ESY services.

79. Defendant MI Dept of Education cited the district for using old
outdated forms and the District UCS responded by promising they would use
correct forms,

80. Defendant MI Dept of Education did nothing about the Districts
failure to provide ESY services to any student pursuant to federal law, and did
not cite them for noncompliance, took no disciplinary action against them, nor did
they enforce them to comply,

81. Defendant MI Dept of Education oversees all of the districts in the state
and should make sure each district complies with federal law,

82. After the District UCS promised to use updated IEP forms, I found
at our next IEP meeting that the District UCS had changed the IEP form to include
the wording about ESY services, but again did not honestly assess plaintiff  for ESY
services. The decision was again based on fact that they do not provide those
services to any student, and no one is making them comply with federal law. I also
found that district changed the part of IEP form regarding: Least Restrictive
Environment, to exclude the parents ability to agree, disagree, or list comments.

83. Note: A Copy of any item referred to in this complaint can be produced

upon request and a copy or example of students current school work (which is approx at the level of a first grader) can be produced upon request.  Parent also has an 18-gallon rubbermaid bin for each past year, containing any and all school work brought home since plaintiff student has been enrolled in school. Also, any item will be further clarified upon request.


Wherefore plaintiffs asks the court to recognize both defendants conduct was and is wrongful and in conscious disregard of the rights of the plaintiffs and the failure to provide services required by federal and state law is disability discrimination and has resulted in possible permanent damage to the students academic, physical and social/emotional well being. Wherefore plaintiffs also ask the court to recognize all of the defendant district UCS acts and omissions as a separate count for each item (listed above) and that they have impaired plaintiffs ability to function at a level he could have reasonable functioned at, and as a result of all of the above defendant district UCS has failed to appropriately educated student for over 6 years. Wherefore plaintiffs respectfully request a judgment and relief against the defendants for damages (in all areas of damages), including emotional distress, to order and enforce all requests mentioned in the complaint, and for any other relief this honorable court feels is satisfactory and appropriate.


Dated:  July 15, 2011                          Respectfully submitted.

Dated:  July 15, 2011                    Respectfully submitted.

Mrs. Gina Sharbowski, *pro per*
and c/o Troy Sharbowski.
42309 Bobjean Street
Sterling Heights, MI 48314
(248) 379-8848 (cell)
Fax: (586) 731-5688
e-mail: AGLSprocess@aol.com

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

County in which action arose *MAComb*

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS** *Troy Sharbowski, a minor AND Gina Sharbowski*

**(b)** County of Residence of First Listed Plaintiff *MAComb*
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number) *(Pro per)*
*42369 Bobjean Street*
*Sterling Hgts, MI 48314*

**DEFENDANTS** *Utica Community Schools, MI Department of Education, et al,*

County of Residence of First Listed Defendant *MAComb*
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE ... INVOLVED.

Case: 2:11-cv-13092
Judge: Borman, Paul D.
MJ: Michelson, Laurie J.
Filed: 07-18-2011 At 02:09 PM
CMP: TROY SHARBOWSKI, ET AL V. UTIC
A COMMUNITY SCHOOLS, ET AL (KB)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. C** (Place an "X" ...)

| | | | | Plaintiff | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | | of Business in ... | | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations / **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | | ☐ 530 General | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☒ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☒ 446 Amer. w/Disabilities - Other / ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | |
| | ☐ 440 Other Civil Rights / ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

*446*

**V. ORIGIN** (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
*29 USC 794 Discrimination (& Personal Injury? could also be: 26 USC 1400?)*
Brief description of cause: *Discrimination Based on Disability*

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ *500,000 +*
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): *(NONE)*
JUDGE _____ DOCKET NUMBER _____

DATE **JUL 15 2011**
SIGNATURE OF ATTORNEY OF RECORD *Plaintiff* */s/ Sharbowski*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## PURSUANT TO LOCAL RULE 83.11

1.       Is this a case that has been previously dismissed?          ☐ Yes
                                                                      ☒ No

   If yes, give the following information:

   Court: _____

   Case No.: _____

   Judge: _____


2.       Other than stated above, are there any pending or previously       ☐ Yes
         discontinued or dismissed companion cases in this or any other     ☒ No
         court, including state court? (Companion cases are matters in which
         it appears substantially similar evidence will be offered or the same
         or related parties are present and the cases arise out of the same
         transaction or occurrence.)

   If yes, give the following information:

   Court: _____

   Case No.: _____

   Judge: _____


Notes :